IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SMB CONSULTING AND INVESTING LLC, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| APPLE VALLEY WASTE SERVICE, INC., | : | NO. 11-2939 |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                        July 20, 2011

Defendant Apple Valley Waste Service, Inc. has filed the present Motion to Dismiss or Transfer Venue. For the following reasons, the Motion is granted and the case is transferred to the Northern District of West Virginia.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff SMB Consulting and Investing LLC ("Plaintiff") is a Pennsylvania limited liability company that provides consulting advice to waste management companies. (Compl. ¶ 6.) Defendant Apple Valley Waste Service, Inc. ("Defendant") is a West Virginia corporation engaged in the business of waste transportation. (Id. ¶ 7.) According to the facts alleged in the Complaint, Plaintiff and Defendant entered into a Consulting Agreement under which Plaintiff would provide exclusive consulting services in connection with the sale of Defendant's assets. (Id. ¶ 2.) In exchange, Plaintiff would receive a six percent commission on the total sale price of the assets. (Id.) In furtherance of the Consulting Agreement, Plaintiff compiled information pertaining to Defendant's assets, marketed the assets for sale, and sought out potential purchasers. (Id. ¶ 3.) Among those potential buyers was Summer Street Capital Partners

("Summer Street"). (Id.) After Plaintiff informed Summer Street that Defendant's assets were available for purchase, Defendant and Summer Street entered into a contract for the sale of the assets without informing Plaintiff of the transaction. (Id. ¶ 4.) Plaintiff alleges that Defendant breached the Consulting Agreement by failing to pay it a commission on this sale. (Id. ¶ 5.)

On April 7, 2011, Plaintiff filed its Complaint in the Court of Common Pleas for Bucks County, Pennsylvania. The Complaint seeks damages for breach of contract and breach of the duty of good faith and fair dealing. (Id. ¶¶ 56-75.) Defendant removed the Complaint to this Court on May 3, 2011, and filed the present Motion to Dismiss or Transfer Venue on May 9, 2011. Plaintiff filed a Response in Opposition on May 23, 2011, and Defendant filed a Reply Brief on June 7, 2011.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant bears the initial burden of raising the lack of personal jurisdiction defense. Nat'l Paintball Supply, Inc. v. Cossio, 996 F. Supp. 459, 460 (E.D. Pa. 1998) (citing Clark v. Matsushita Elec. Indus. Co., Ltd., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993)). Once the defense has been raised, the burden shifts to the plaintiff to demonstrate that such jurisdiction exists. Poole v. Sasson, 122 F. Supp. 2d 556, 557 (E.D. Pa. 2000) (citation omitted). Although the court is required to accept as true the allegations of the pleadings and all reasonable inferences therefrom, "a plaintiff may not solely rely on bare pleadings to satisfy his jurisdictional burden. Rather, the plaintiff must offer evidence that establishes with reasonable particularity sufficient contact between the defendant and the forum state to support jurisdiction." Id. If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable. De

2

Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. CIV.A.08-00533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008) (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

## III.  DISCUSSION

### A.  Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.  FED. R. CIV. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Group, Inc., No. CIV.A.10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010).  In Pennsylvania, personal jurisdiction over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 PA. CONS. STAT. § 5322(b); see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").

The Due Process Clause "requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Two types of personal jurisdiction have been recognized by federal courts: "general and specific jurisdiction.  General jurisdiction exists when a defendant has maintained systematic and

continuous contacts with the forum state." Id. at 300 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)).  Specific jurisdiction is present "when the claim arises from or relates to conduct purposely directed at the forum state." Id. (citing Helicopteros, 466 U.S. at 414-15 & n.8).  In deciding whether specific jurisdiction exists, a district court conducts a three-part analysis.  First, the defendant's activities must have been "purposefully directed" at the forum.  Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Next, "the plaintiff's claim must 'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros, 466 U.S. at 414).  Finally, "courts may consider additional factors to ensure that the assertion of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" Id. (quoting Burger King, 471 U.S. at 476).

  Defendant, a West Virginia corporation, argues that it does not have the requisite contacts with Pennsylvania to establish either general or personal jurisdiction.  (Def.'s Mot. Dismiss 8-14.)  According to Defendant, there is no general jurisdiction because it does not operate in Pennsylvania, have business contacts in the state, or have any property, investors, board members, shareholders, or agents in Pennsylvania.  (Id. at 10-11.)  With respect to specific jurisdiction, Defendant contends that Plaintiff initiated the business discussions that resulted in the formation of the Consulting Agreement, that it never traveled to Pennsylvania in connection with its dealings with Plaintiff, and that the Consulting Agreement was presented to it in West Virginia.  (Id. at 4, 14.)  Defendant states that the only contacts it had with Pennsylvania were telephone calls concerning Plaintiff's request to provide consulting services, which are insufficient to create specific jurisdiction.  (Id.)

4

In response, Plaintiff first argues that specific jurisdiction[1] exists over Defendant because its claims arise of out the Consulting Agreement, which was executed in Pennsylvania. (Pl.'s Resp. Opp'n 7-8.) Next, Plaintiff acknowledges that while the mere existence of the Consulting Agreement does not create jurisdiction, the totality of the circumstances in this case indicates that the exercise of jurisdiction would be proper. (Id. at 8.) To that end, Plaintiff contends that Defendant knew it was dealing with a Pennsylvania entity, that the Consulting Agreement required any notices to be sent to Plaintiff in Pennsylvania, that Defendant was to communicate with Plaintiff regarding performance of the contract, and that the Consulting Agreement and any claims arising out of it were governed by Pennsylvania law. (Id. at 9.) Furthermore, Defendant was aware that Plaintiff was using a Confidential Offering Memorandum that Plaintiff prepared in Pennsylvania to pursue Pennsylvania companies as possible purchasers for the assets. (Id.) Finally, Plaintiff argues that Defendant initiated seventy-one e-mails and twelve telephone calls to Plaintiff, both before and after the execution of the contract. (Id. at 10.)

At the outset of its analysis, the Court notes – and both parties have acknowledged – that "[m]erely entering into a contract with a forum resident does not subject a nonresident to personal jurisdiction." Quandel Grp. v. Chamberlin Co., Inc., No. CIV.A.98-5762, 1999 WL 382878, at *2 (E.D. Pa. June 14, 1999) (citations omitted). Rather, when assessing whether

---

[1] Plaintiff also contends that Defendant has had sufficient systematic and continuous contacts with Pennsylvania to support a finding of general jurisdiction. (Pl.'s Resp. Opp'n 12-14.) In support of this argument, Plaintiff points to the fact that Defendant's owner, Randie Lawson, sold a waste hauling company to a Pennsylvania entity in 1997 or 1998, and that Plaintiff's owner, Steven Berry, assisted Mr. Lawson in purchasing the assets that would eventually be used to form Apple Valley Waste Service, Inc. (Id. at 13.) As Defendant notes, however, all of these alleged contacts with Pennsylvania were made by Mr. Lawson before Defendant was even incorporated. (Def.'s Reply Br. 8.) As such, they cannot be attributed to Defendant, and the Court finds no basis for asserting general jurisdiction.

minimum contacts are present in a contracts case, a court should look to "the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." Mellon Bank, 960 F.2d at 1223. Here, the Consulting Agreement states that it "is executed in, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (Pl.'s Resp. Opp'n, Ex. A ¶ 19.) Nevertheless, choice of law clauses and contractual language indicating that an agreement was executed in a particular forum do not definitively establish jurisdiction, Quandel Grp., 1999 WL 382878, at *3, and there is nothing else in the Consulting Agreement to establish a connection with Pennsylvania. The contract merely describes the services to be rendered by Plaintiff in connection with its objective of finding a purchaser for Defendant's assets. The Consulting Agreement is silent with respect to the location of performance; it does not identify Pennsylvania or any other forum as the one in which Plaintiff or Defendant must execute their duties under the contract. In sum, the terms of the Consulting Agreement itself do not conclusively establish personal jurisdiction over Defendant.

The Court next turns to Plaintiff's argument concerning the e-mails and phone calls made by Defendant. Plaintiff correctly observes that "'mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.'" (Pl.'s Resp. Opp'n 9 (quoting Grant Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).) The Third Circuit, however, has also held that "'informational communications in furtherance of [a contract between a resident and a nonresident] [do] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" Vetrotex Certaineed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d

147, 152 (3d Cir. 1996) (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)).[2] Here, although Defendant may have sent numerous e-mails and made several phone calls in furtherance of the contract, Plaintiff has not identified anything concerning those communications that establish any kind of connection with Pennsylvania. Furthermore, Plaintiff has not alleged that any of its claims arise from any of these communications. See Sunbelt, 5 F.3d at 33 (finding that the appellee's telephone calls from Pennsylvania to Texas did not establish jurisdiction in Texas when the calls themselves were not the basis of the cause of action).

Finally, the Court considers the argument that jurisdiction exists in this case because Plaintiff created in Pennsylvania a Confidential Offering Memorandum for Defendant's assets, pursued Pennsylvania companies as potential purchasers, and acted with Defendant's knowledge when carrying out these activities. The Supreme Court, however, has held that

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319). Therefore, the fact that *Plaintiff* conducted activity in Pennsylvania in furtherance of the contract does not provide the Court with a basis for asserting jurisdiction over Defendant. More importantly, Plaintiff does not contend that the alleged breach in this case stems from any of its own or Defendant's actions in Pennsylvania. To the contrary, the Complaint states that Plaintiff

---

[2] The Third Circuit has held that this rule applies to informational communications that are made both before and after a contract commences. See Vetrotex, 75 F.3d at 152; Sunbelt, 5 F.3d at 32.

contacted Summer Street – a New York entity – to see if it would be interested in purchasing Defendant's assets, that Summer Street declined the offer, but that subsequent to these negotiations Defendant and Summer Street entered into their own deal for the sale and purchase of the assets. (Compl. ¶¶ 25-38.) The Complaint further asserts that pursuant to the Consulting Agreement, Plaintiff was Defendant's exclusive representative, and that Defendant breached the contract by failing to pay Plaintiff a commission on the sale. (Id. ¶¶ 16, 55.) Therefore, the harm allegedly suffered by Plaintiff in this case occurred when Defendant sold its assets – located in West Virginia – to a company in New York.

After considering the above facts and the relevant arguments of both parties, the Court notes that there are strong similarities between the present matter and the Third Circuit's opinion in Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir. 1984). In Time Share, the appellant, a Pennsylvania corporation, entered into a contract with the appellees, citizens of Maryland, to assist the appellees in finding potential customers to buy time shares at their resort. Id. at 62. As in this case, the appellees allegedly breached the agreement by failing to pay the appellant's commission and other expenses. Id. at 62-63. The appellant alleged that Pennsylvania had jurisdiction over the appellees because all of the sales and promotional materials were developed in the appellant's Pennsylvania office, and because the appellant brought Pennsylvania residents to the appellees' location in Maryland. Id. at 64. Despite these facts – and despite the existence of a Pennsylvania choice of law provision in the contract – the Third Circuit found no personal jurisdiction existed. Id. at 65. The court held that "[t]he fact that Time Share itself prepared promotional material and solicited customers in Pennsylvania, albeit in compliance with the terms of the contract with defendants, does not in any way show

that the *defendants*, or any one of them, has performed acts for or by which it could reasonably expect to be haled into court in Pennsylvania." Id. Importantly, the Third Circuit noted that none of the appellees' actions – such as advertising in Pennsylvania and sending an airplane to transport potential customers from Pennsylvania to its resort – were related to the appellant's injuries, and so they could not be used as a basis for asserting jurisdiction. Id. at 66.

In sum, the Court finds that Time Share is a controlling precedent and concludes that Defendant lacks the necessary minimum contacts with Pennsylvania to establish personal jurisdiction.

      **B.      Plaintiff's Request to Conduct Discovery on the Issue of Jurisdiction**

Plaintiff has requested the opportunity to conduct discovery to obtain additional information concerning Defendant's contacts with Pennsylvania. (Pl.'s Resp. Opp'n 18-19.) The Third Circuit has held that when "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Mellon Bank, 960 F.3d at 1223). Here, Plaintiff has simply asked the Court to open discovery on the jurisdictional issue without articulating with reasonable particularity what additional contacts it hopes to find. Given the allegations made in the Complaint, the Court is unable to discern how allowing Plaintiff to seek more information would help demonstrate jurisdiction in this case. As discussed above, Plaintiff was harmed when Defendant – a West Virginia company that contracted with Plaintiff to sell assets located in West Virginia – entered into a purchase and sale agreement with a New York company and failed to pay Plaintiff its commission. As such, even

if Plaintiff was able to show that Defendant knew it was negotiating with potential buyers in Pennsylvania – indeed, even if Defendant had discussions with Plaintiff about those potential purchasers – it would not be enough to establish jurisdiction because those activities were unrelated to the breach. Plaintiff's request to conduct discovery on the issue of jurisdiction is therefore denied.

### C. Transfer

Having found that it lacks jurisdiction over Defendant, the Court must decide whether to dismiss the case or transfer it to a proper venue. Pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed.

Although neither party has asked for a transfer pursuant to § 1631,[3] the Court may do so sua sponte. See Junge v. Wheeling Island Gaming, Inc., No. CIV.A.10-1033, 2010 WL 4537052, at *7 (W.D. Pa. Nov. 2, 2010) (citing Chicosky v. Presbyterian Med. Ctr., 979 F.Supp. 316, 320-23 (D.N.J. 1997)). Here, Defendant has stated that the United States District Court for the Northern District of West Virginia would be an adequate alternative forum for this litigation. (Def.'s Mot. Dismiss 17.) Rather than dismiss the case, which would force Plaintiff to re-file and pay the attendant fees, the Court finds that the interest of justice would be best served by transferring the matter to the Northern District of West Virginia.

## IV. CONCLUSION

For all of the foregoing reasons, the Court finds that it lacks personal jurisdiction over

---

[3] In the event that the Court found it did have personal jurisdiction, Defendant requested a transfer pursuant to 28 U.S.C. § 1404. (Def.'s Mot. Dismiss 18-19.)

Defendant, and Defendant's Motion to Dismiss or Transfer Venue is therefore granted.  Rather than dismiss this action, the Court transfers the case to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1631.  An appropriate Order follows.