**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**SMB CONSULTING AND
INVESTING, LLC,**

      Plaintiff,

v.                                             **CIVIL ACTION NO. 3:11-CV-70
(JUDGE GROH)**

**APPLE VALLEY WASTE
SERVICE, INC.,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On this day, the above-styled matter came before the Court for consideration of the Defendant's Motion for Summary Judgement [Doc. 65], filed on June 1, 2012, as well as the Plaintiff's Motion for Summary Judgment [Doc. 68], also filed on June 1, 2012. Both the Plaintiff and the Defendant seek summary judgment with regard to the Plaintiff's Complaint, which was transferred to this Court from the United States District Court for the Eastern District of Pennsylvania on July 21, 2011. The parties' respective motions have been fully briefed and are now ripe for decision. Having reviewed the record and considered the arguments of the parties, the Court concludes that the Defendant's Motion for Summary Judgment must be **GRANTED IN PART** and **DENIED IN PART**, and the Plaintiff's Motion for Summary Judgment must be **DENIED**.

## II. **FACTUAL BACKGROUND**

The undisputed facts in this case are as follows: Plaintiff SMB Consulting and Investing, LLC ("SMB") is a consulting and investing company founded by Steven M. Berry, who is the president and sole member. Defendant Apple Valley Waste, Inc. ("AVW") is a corporation organized under the laws of West Virginia and located in Kearneysville, West Virginia. AVW was in the business of the collection and disposal of solid waste and the collection of recyclables. Randie Lawson was the founder, president, and majority shareholder of AVW. James P. Phillips was the general manager and minority shareholder of AVW.

In the summer of 2009, Berry offered to serve as a consultant in connection with the potential sale of AVW. On or about July 7, 2009, Berry sent Lawson a draft Consulting Agreement ("Consulting Agreement," or "Agreement") for his review, as well as a draft Confidentiality Agreement that prospective purchasers would sign in order to obtain confidential financial and operating information about AVW. On July 14, 2009, Lawson's attorney, Ronald Flora, Esq., sent Berry signature pages signed by Lawson with regard to both the Consulting Agreement and the Confidentiality Agreement. AVW did not send any written changes to the Consulting Agreement with the signature page which it forwarded to Berry.

Lawson, however, denies that by forwarding the signature page, he was agreeing to the terms set forth in the Consulting Agreement, specifically the term regarding Berry's commission. The Consulting Agreement signed by Lawson provided for a six percent commission to be paid to Berry. However, Lawson maintains that he had a specific conversation with Berry regarding the commission, and that Berry agreed and understood

that Lawson was not agreeing to pay him a six percent commission.

Lawson also denies that Berry signed the Consulting Agreement on behalf of SMB. According to Lawson, Berry never provided Lawson with a reciprocal executed copy of the Consulting Agreement, despite numerous requests from Lawson's counsel.

Under the Consulting Agreement, AVW retained SMB to "exclusively represent [AVW] in the sale of the Business." SMB acknowledged that it was "solely an independent contractor and consultant" and that it would "perform independent consulting services upon the terms and conditions hereinafter set forth" in the Agreement. The "Scope of Services" were "as set forth on Exhibit A" to the Agreement, and SMB was to "perform such services as may be reasonably required by [AVW]."

The term of the Consulting Agreement was July 7, 2009, to July 6, 2010, although it could be extended by mutual agreement.

Paragraph 14 of the Consulting Agreement provided that:

> No termination of this Agreement or of the Consultant's work hereunder shall relieve the Company from its obligations to compensate Consultant as set forth in Section 5 hereof and Schedule A attached hereto and such obligations shall survive for a period of 12 months after termination or expiration of this agreement.

Paragraph 5 of the Consulting Agreement provided that:

> The compensation to be paid the Consultant for the services to be rendered pursuant to this Agreement shall be as set forth on Exhibit A.

"Exhibit A" to the Consulting Agreement, which was signed and executed separately by Lawson, provided that:

> Services provided by the Consultant include but are not limited to the following:

1. Develop and have all interested parties execute a confidentiality agreement substantially in the form of the attached document.

2. Prepare and distribute a Confidential Offering Memorandum that will provide the following details:

   a. Introduction and Executive Summary
   b. Services provided by the Company
   c. Markets Served
   d. Customer (Numbers only). No customer specific information.
   e. Management and Employees
   f. Financial Performance (Explanation of variance included)
   g. Company Background
   h. Facility and Infrastructure
   i. Fleet Information
   j. Containers and Compactors
   k. Corporate Organization

3. Assist in the preparation and negotiation of a Letter of Intent.

4. Provide written responses to questions and Data requests from prospective purchasers.

5. Provide responses to specific requests for additional information and data; answers to additional questions; and assistance with reviewing and commenting on the Asset Purchase Agreement or Stock Purchase Agreement.

The last paragraph in "Exhibit A" provided that:

Consultant's compensation shall be paid at the time of closing by wire transfer to an account designated by Consultant in the amount of 6% of the total consideration paid to the Seller. Total consideration paid to the Seller is defined as all consideration cash, notes, consulting agreements, royalties, and stock, either paid at closing or post closing to the seller.

SMB drafted a Confidential Offering Memorandum and a Confidentiality Agreement regarding the potential sale of AVW's assets and provided the same to two potential

purchasers of the assets. AVW maintains that SMB's Confidential Offering Memorandum was actually based on a packet of information previously drafted by AVW in connection with potential refinancing.

SMB argues that the terms of the Scope of Services in Exhibit A to the Consulting Agreement did not require that SMB in fact procure the ultimate purchaser of AVW or its assets. SMB argues that Paragraph 5 and "Exhibit A" to the Consulting Agreement, by their plain terms, do not relieve AVW of its obligation to pay compensation to SMB if AVW fails to request services in connection with the ultimate sale of the business. It is undisputed that SMB did, in fact, prepare a Confidential Offering Memorandum which was provided to at least two prospective purchasers, after those prospective purchasers had executed Confidentiality Agreements which were also provided by SMB, and it is further undisputed that SMB provided responses to questions and data requests from potential purchasers in coordination with AVW.

AVW, for its part, argues that by the Plaintiff's own admission, there is no language, other than the term "exclusive" in Paragraph 1 of the Consulting Agreement, to support SMB's argument. AVW maintains that Lawson never agreed that Berry would be entitled to compensation whether or not he procured the ultimate purchaser of AVW's assets. AVW further maintains that there was no discussion between Lawson and Berry regarding the meaning of the term "exclusive," and Berry never informed Lawson that "exclusive," as set forth in the Consulting Agreement, meant that Berry would receive payment whether or not Berry procured the ultimate purchaser. According to AVW, Berry could have, but did not, include a provision in the Consulting Agreement that precluded AVW from acting as its own representative in the sale of its assets.

5

J.P. Phillips, the General Manager of AVW at all relevant times, provided information to SMB in connection with the potential sale of AVW's assets. This information, which Phillips continued to provide into 2010, included financial statements, organizational charts, equipment, asset and employee lists, payroll information, information about owner-specific expenses, tax and licensing information, financial projections, and Public Service Commission certificates. AVW claims that this information was based on information previously compiled by Lawson and Phillips in connection with potential refinancing of AVW.

Phillips also provided SMB with information concerning an acquisition AVW had completed in Maryland in the Fall of 2009, after the Consulting Agreement was executed. SMB argues that as a result of this, SMB understood that the Maryland assets were being included in the sale of AVW's assets.

AVW, on the other hand, denies that SMB was authorized to market the assets of Apple Valley Waste Services of Maryland, Inc. ("AVW Maryland"), as the Maryland assets were to become known. AVW argues that the Consulting Agreement was between SMB and AVW, and that the Agreement only authorized SMB to act on behalf of AVW.

SMB maintains that based on the terms of the Consulting Agreement, SMB at all times expected that AVW would notify it of any potential purchasers who had contacted AVW directly so that SMB could perform services pursuant to the Agreement, serve as AVW's exclusive agent in negotiating with those potential purchasers, and receive the specified compensation. AVW denies that it agreed to notify SMB of any potential purchasers who contacted AVW directly, and AVW furthermore denies that the Consulting Agreement required it to do so, or otherwise prohibited AVW from acting as its own broker

6

with respect to potential purchasers who contacted AVW directly.

AVW forwarded an email with the name and telephone number of at least one potential purchaser who directly contacted AVW to SMB. AVW denies, however, that it was required to forward this information.

Around October 2009, during the term of the Consulting Agreement, John Decker, Vice President of a separate waste company, Casella Waste Services, Inc., visited with Lawson in West Virginia, during which time Lawson had a discussion with Decker concerning the sale of AVW's assets, and Decker expressed interest in purchasing AVW. Lawson asserts that he and Decker were personal friends and that he had known for some time of Decker's interest in purchasing AVW. According to Lawson and AVW, active discussions with Decker regarding the purchase of AVW's assets predated the Consulting Agreement between SMB and AVW.

Decker was also a friend of Berry's as a result of the two having formerly worked together. Berry had previously introduced Decker to Lawson.

As a part of Decker's negotiations with AVW, AVW began to provide Decker with operating and financial data pertaining to AVW. SMB argues that AVW began to provide Decker with this information around October of 2009. AVW argues that it began sooner. AVW did not inform SMB that it had provided financial information to Decker. According to Lawson, he discussed with Decker the fact that Berry was seeking to sell AVW's assets. Decker requested that his involvement with the potential transaction be kept confidential because he did not want his boss at Casella Waste, with whom Berry had a relationship, to know of Decker's interest in purchasing AVW.

Because he lacked the financial resources to purchase AVW himself, Decker had

7

to seek financing. Although the parties dispute exactly how Decker came to form a professional relationship with Brian D'Amico at Summer Street Capital Partners LP ("Summer Street"), a private equity firm with investments in the waste industry, it is sufficient for the Court's purposes to note that on March 29, 2010, Decker met with D'Amico to discuss working together on the AVW deal. Beginning in spring or early summer of 2010, Decker began to provide documents he received from AVW to Summer Street about AVW's financial condition and operations. Negotiations between Decker, Summer Street, and AVW then began in earnest.

On July 6, 2010, the original term of the Consulting Agreement between SMB and AVW ended. By August 9, 2010, a Letter of Intent was executed between Summer Street and AVW, with a proposed purchase price of $24.5 million.

SMB alleges that Decker received from Phillips at AVW a collection of documents that incorporated and were substantially identical to much of SMB's Confidential Offering Memorandum. AVW asserts that this is so because the sections which SMB refers to are financial documents which were provided to both SMB and Decker/Summer Street. AVW denies that it copied SMB's work product.

Summer Street formed a Delaware corporation called AVW Acquisition Corp. in order to purchase the assets of AVW. AVW, AVW Acquisition Corp., Lawson, and Phillips executed an Asset Purchase Agreement on October 15, 2010. Decker was not a party to the Asset Purchase Agreement. The Asset Purchase Agreement listed a sale price of $24,483,000 to purchase AVW's assets.

Prior to closing and after the signing of the Asset Purchase Agreement, SMB contacted Lawson and made a demand for compensation owed under the Consulting

8

Agreement.

On December 30, 2010, counsel for AVW, Ronald J. Flora, Esq., issued an Opinion Letter on behalf of AVW to Summer Street. This letter stated that "[b]ased upon information and belief, I am of the opinion that the only putative claim against either Company referenced hereinabove is the putative claim by SMB Consulting and Investment, LLC, relative to a Consulting Agreement dated the 6th day of July, 2009, between SMB and Apple Valley Waste Service, Inc."

The sale of AVW's assets closed on December 31, 2010, within twelve months of the end of the term of the Consulting Agreement. AVW did not pay any compensation to SMB. SMB now seeks compensation under the Consulting Agreement in the amount of $1,468,980, which it asserts to be six percent of the total consideration provided to AVW at closing.

### III. **PROCEDURAL HISTORY**

The Plaintiff initially filed its Complaint in the Court of Common Pleas of Bucks County, Pennsylvania, on April 7, 2011, alleging separate counts for: (1) breach of contract; and (2) breach of the implied contractual duty of good faith and fair dealing. Said Complaint was subsequently removed to the United States District Court for the Eastern District of Pennsylvania on May 2, 2011 [Doc.1]. On July 20, 2011, the United States District Court for the Eastern District of Pennsylvania entered an order transferring this matter to this Court, finding that it lacked personal jurisdiction over Defendant AVW [Docs. 14, 15].

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332, as the Plaintiff and the Defendant are citizens of different states, and the amount

in controversy exceeds the sum of $75,000 exclusive of interest and costs. For purposes of diversity jurisdiction, a limited liability company's citizenship is that of each of its members. ***Zambelli Fireworks Mfg. Co., Inc. v. Wood***, 592 F.3d 412, 420 (3rd Cir. 2010). SMB Consulting is a single member limited liability company and a Pennsylvania citizen because its single member, Steven M. Berry, is a citizen of the Commonwealth of Pennsylvania. "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. §1332(c)(1). AVW is a West Virginia corporation with its principal place of business in Kearneysville, West Virginia. As such, this Court may properly exercise jurisdiction over Defendant AVW.

On June 1, 2012, both the Plaintiff and the Defendant filed cross-motions for summary judgment [Docs. 65 and 68]. Both motions have been fully briefed and are now ripe for adjudication.

## IV. DISCUSSION

**1.    Summary Judgment Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation. ***JKC Holding Co. LLC v. Washington Sports Ventures, Inc.***, 264 F.3d 459, 465 (4th Cir. 2001) (citing ***Hooven-***

*Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001)). Mere speculation by the non-movant cannot create a genuine issue of material fact. *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). A material fact is one where its existence or non-existence could result in a different jury verdict. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. National Cable Advert., L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995).

The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility but to determine whether there is any genuine issue of fact that can only properly be resolved by a finder of fact because it could reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

**2. Plaintiff's Motion for Summary Judgment with Regard to Count I—Breach of Contract**

With regard to Count I, the Plaintiff argues AVW breached the Consulting Agreement when it failed to pay compensation to SMB from the sale proceeds from AVW's assets. The Plaintiff asserts that the parties had an enforceable contract that required AVW to compensate the Plaintiff for "services rendered." The Plaintiff relies on Paragraph 1 of the Consulting Agreement, which provided that "[t]he Company hereby retains the Consultant to *exclusively* represent the Company in the sale of the Business" (emphasis added), when

11

it argues that the Consulting Agreement did not require the Plaintiff to procure the ultimate purchaser. According to the Plaintiff, AVW's obligation to pay the Plaintiff a commission arose as a result of "services rendered" by the Plaintiff, pursuant to Paragraph 5 of the Consulting Agreement.

The Plaintiff next argues that AVW breached the contract by failing to compensate the Plaintiff "[six percent] of the total consideration paid to [AVW]" upon the sale of AVW's assets. The Plaintiff argues that the Consulting Agreement contemplated payment for a transaction which occured within twelve months after the conclusion of the parties' contractual term, as was the case with the sale of AVW's assets to Summer Street.

The Plaintiff finally argues that it was damaged by the failure of AVW to pay the Plaintiff compensation pursuant to the parties' Consulting Agreement.

AVW, for its part, first argues that there remains a factual dispute as to whether or not the Consulting Agreement was ever fully executed, because, according to AVW, although AVW forwarded an executed signature page to the Plaintiff on July 14, 2009, the Plaintiff did not provide a reciprocal executed copy to AVW until February 2012, approximately one year into the instant litigation.

Next, AVW disputes the Plaintiff's contention that it was obligated to compensate the Plaintiff regardless of whether or not the Plaintiff procured the ultimate purchaser. According to AVW, the Plaintiff relies on the word "exclusive," but the contract fails to define the world "exclusive," and does not specifically state that "exclusive" requires compensation whether or not the Plaintiff procured the ultimate purchaser. AVW maintains that because the Plaintiff was the drafter of the Consulting Agreement, any ambiguous terms must be construed against it, thus rendering summary judgment in favor of the Plaintiff with regard

12

to Count I improper.

Additionally, AVW asserts that there was no agreement between the parties that the Plaintiff would receive a six percent commission. AVW acknowledges that the Consulting Agreement signed by Lawson specifies a six percent commission, but nevertheless maintains that this was not the parties' agreement.

AVW asserts that the Plaintiff's reliance on services which it rendered to AVW is irrelevant, because the Plaintiff always assumed the risk that it might not be paid for its services. By way of example, AVW asserts that if there had been no buyer at all, then the Plaintiff would not be entitled to any compensation for any services rendered by it.

Pursuant to Paragraph 19 of the Consulting Agreement, "[t]his Agreement is executed in, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." Under Pennsylvania law, the essential elements for a breach of contract claim are "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. 2005).

The fundamental rule when interpreting a contract is to ascertain and give effect to the intent of the contracting parties, which in a written agreement is generally embodied in the writing itself. **Crawford Central School Dist. v. Commonwealth of Pennsylvania**, 888 A.2d 616, 623 (Pa. 2005). "When contract language is clear and unequivocal, its meaning must be determined by its contents alone." **Id.** Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. **Erie Ins. Exchange v. Conley**, 29 A.3d 389, 392 (Pa.

Super. 2011). As a general rule, agreements will be construed against the drafter when terms are ambiguous. **Gallagher v. Fidelcor, Inc.**, 657 A.2d 31, 34 (Pa. Super. 1995).

As an initial matter, the Court must address AVW's argument that the Consulting Agreement was never fully executed, or that, at best, a question of fact exists as to whether or not it was fully executed. The Court finds that a genuine question of material fact does, indeed, exist. While AVW admits that it ultimately received a signed copy of the Consulting Agreement during discovery, the signature line on the Consulting Agreement is undated, and hence there is no definitive indication as to when it was actually signed. Paragraph 18 of the Consulting Agreement provided that "[t]his Agreement may be executed in separate counterparts which shall collectively and separately be considered one and the same Agreement," but also provides that "[n]o party shall be bound by this Agreement unless and until all parties have executed it." Based on its review of the evidence, the Court finds that a genuine question of material fact exists as to whether or not the Consulting Agreement was fully executed.

Furthermore, the Court finds that a contractual ambiguity exists with regard to whether or not SMB was entitled to compensation regardless of whether or not it procured the ultimate purchaser. While the Consulting Agreement refers to the SMB's services as being "exclusive," that term is not defined, and nowhere in the Agreement does it specifically state that SMB was entitled to compensation whether or not SMB was responsible for procuring the ultimate purchaser. A reasonable juror could conclude either way on the issue. Because SMB was the drafter of the Consulting Agreement, any ambiguities must be construed against it. See **Gallagher v. Fidelcor, Inc.**, 657 A.2d 31,

34 (Pa. Super. 1995).

However, there is no ambiguity in the written contract with regard to the amount of compensation. Paragraph 5 of the Consulting Agreement provided that "[t]he compensation to be paid to the Consultant for the services to be rendered pursuant to this Agreement shall be as set forth in Exhibit A." "Exhibit A," in turn, which was signed separately by Lawson on behalf of AVW, provided that "Consultant's compensation shall be paid at the time of closing by wire transfer to an account designated by Consultant in the amount of 6% of the total consideration paid to the Seller." "Exhibit A" further provides that "[t]otal consideration paid to the Seller is defined as all consideration cash, notes, consulting agreements, royalties, and stock, either paid at closing or post closing to the Seller."

Paragraph 15 of the Consulting Agreement contained an integration clause which provided that "[t]his Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of the Consultant by the Company and contains all of the covenants and agreements between the parties with respect to such employment." In light of the above, AVW cannot argue that any ambiguity exists as to the amount of compensation. The plain terms of the Consulting Agreement must be applied.

Because genuine questions of material fact exist with regard to contract formation and the meaning of the term "exclusive," the Plaintiff's Motion for Summary Judgment with regard to Count I of its Complaint must be **DENIED**.

3. **Plaintiff and Defendant's Cross-Motions for Summary Judgment with Regard to Count II—the Implied Duty of Good Faith and Fair Dealing**

With regard to Count II, the Plaintiff argues that AVW breached the duty of good faith and fair dealing inherent in the Consulting Agreement by deliberately excluding the Plaintiff from negotiations with the ultimate purchaser.

AVW, on the other hand, argues that the Plaintiff cannot, as a matter of law, legally assert a separate count for breach of the implied contractual duty of good faith and fair dealing, as any such breach would be a breach of the contract itself, as contained in Count I of the Plaintiff's Complaint.

In Pennsylvania, every contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract. *Giant Food Stores, LLC v. THF Silver Spring Development, L.P.*, 959 A.2d 438, 447 (Pa. Super. 2008). This duty requires "both parties to act consistent with the justified expectations of the other party." *Herzog v. Herzog*, 887 A.2d 313, 317 (Pa. Super. 2005). "In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that could destroy or injure the other party's right to receive the fruits of the contract." *John B. Conomos, Inc. v. Sun Company, Inc.*, 831 A.2d 696, 706 (Pa. Super. 2003) (citations omitted).

At the same time, however, "under Pennsylvania law, there is no separate cause of action for breach of the duty of good faith and fair dealing and . . . such a claim is subsumed within a breach of contract claim." *See Cummings v. Allstate Ins. Co.*, 832

16

F.Supp.2d 469, 474 (E.D. Pa. 2011). This is so because "a claim for breach of the implied covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing." *Id.* at 473 (citing **LSI Title Agency, Inc. v. Evaluation Servs., Inc.**, 951 A.2d 384, 391 (Pa. Super. 2008)). *See also* **Zaloga v. Provident Life & Accident Ins. Co. of America**, 671 F.Supp.2d 623, 631 (M.D. Pa. 2009) ("[t]here is . . . no independent cause of action for a breach of the covenant of good faith and fair dealing arising in contract in Pennsylvania because such a breach is merely a breach of contract." (citing **The Birth Center v. St. Paul Companies, Inc.**, 787 A.2d 376 (Pa. 2001))).

The Plaintiff argues that its "claim for breach of the implied duty of good faith and fair dealing is not based on AVW's breach of a specific term of the Consulting Agreement but on breach of the implied duty through AVW's concealment of the proposed Summer Street transaction and its exclusion of SMB from AVW's negotiations with the ultimate purchaser."

However, it is clear to the Court that to the extent that the duty of good faith and fair dealing was implied in the parties' contract, any breach of the same is a breach of the contract itself. Therefore, pursuant to Pennsylvania law, the Plaintiff may not assert a separate count for breach of the implied duty of good faith and fair dealing, but must assert the same as part of its breach of contract claim. Accordingly, summary judgment in favor of the Defendant must be **GRANTED**, and summary judgment in favor of the Plaintiff must be **DENIED** with regard to Count II, and that count is hereby **DISMISSED**.

4. **Defendant's Motion for Summary Judgment with Regard to the AVW Maryland Assets**

AVW maintains that the Consulting Agreement, to the extent that a court might find it valid and enforceable, did not authorize the Plaintiff to market the assets of AVW Maryland, a separate corporation acquired by AVW after it had entered into the Consulting Agreement with SMB. Therefore, argues AVW, any proceeds received as a result of the sale of AVW Maryland are not subject to a commission. AVW argues that the Consulting Agreement only authorized SMB to act on behalf of AVW, not AVW Maryland, because AVW Maryland was not a party to the Consulting Agreement, and, indeed, did not even exist at the time that the Consulting Agreement was entered into.

SMB, on the other hand, argues that: (1) the plain language of the Consulting Agreement does not require a reduction in the damages calculation because SMB is entitled to compensation based on "the total consideration paid to the Seller;" and (2) AVW's own conduct placed the AVW Maryland assets within the scope of the Consulting Agreement by providing SMB with information concerning AVW Maryland to be utilized by SMB in carrying out its consulting services.

Ultimately, the Court finds a genuine issue of material fact exists with respect to whether or not the assets of AVW Maryland were placed within the scope of the Consulting Agreement by AVW's own conduct. It is undisputed that AVW alone received the "total consideration" paid for all of the assets under the Asset Purchase Agreement, including the assets of AVW Maryland. The Consulting Agreement provided at Paragraph 5 that "compensation to be paid to [SMB] for the services to be rendered pursuant to this Agreement shall be set forth on Exhibit A." "Exhibit A" defined "compensation" as "[six

percent] of the total consideration paid to the Seller," which was further defined as "all consideration cash, notes, consulting agreements, royalties, and stock, either paid at closing or post closing to the Seller."

It is undisputed that AVW provided financial and operating information concerning AVW Maryland to SMB, and SMB incorporated that information into its consulting materials on behalf of AVW. A finder of fact may consider the parties' "course of performance," defined as the "sequence of conduct between the parties subsequent to formation of the contract during performance of the terms of the contract." ***J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.***, 810 A.2d 672, 683-84 (Pa. Super. 2002). While "course of performance" may not be considered to modify a contract, it may be considered to interpret contractual terms. ***Id.***

In the instant case, the Court finds that AVW's act of providing information to SMB concerning AVW Maryland, to be utilized by SMB in marketing AVW's assets, could reasonably indicate that at the time the Consulting Agreement was entered into, the parties contemplated that future-acquired assets, such as the AVW Maryland assets, might potentially fall within the ambit of "total consideration" for which SMB was performing services.

Whether or not the parties actually intended for the AVW Maryland assets to fall within the scope of the Consulting Agreement is a question of fact to be properly determined by a jury. However, the Court rejects the Defendant's argument that the Plaintiff cannot, as a matter of law, recover a commission based upon the assets of AVW Maryland, and the Defendant's Motion for Summary Judgment in that regard is accordingly

**DENIED**.

## V. **CONCLUSION**

For the foregoing reasons, this Court hereby **GRANTS IN PART**, and **DENIES IN PART**, the Defendant's Motion for Summary Judgment **[Doc. 65]**, and **DENIES** the Plaintiff's Motion for Summary Judgment **[Doc. 68]**. Count II of the Plaintiff's Complaint is hereby **DISMISSED** and **ORDERED STRICKEN**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** October 25, 2012

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE